UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

-against-

DAQUAN SELBY,

                            Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  03/05/2024
```

23 Cr. 515 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On October 5, 2023, a Manhattan grand jury returned an indictment (the "Indictment") charging Defendant, Daquan Selby, with possession of ammunition after a felony conviction in violation of 18 U.S.C. § 922(g)(1). Indictment, ECF No. 1. Selby moves to (1) dismiss the Indictment as violating the Second Amendment of the Constitution, Dismiss Mem., ECF No. 12; and (2) suppress identification evidence or, in the alternative, for a *Wade* hearing, Suppression Mem., ECF No. 15. For the reasons stated below, the motions are DENIED.

## BACKGROUND

The Government alleges that on January 12, 2020, Selby shot an individual on East 228th Street, near the intersection with Laconia Avenue, in the Bronx. Suppression Mem. at 1; *see also* Suppression Opp. at 2, ECF No. 19. The individual "sustained a gunshot to the neck and head area." Suppression Mem. at 1. Although he survived, he "was unconscious and could not speak with responding officers." *Id.* When New York City Police Department ("NYPD") officers reviewed surveillance footage of the intersection, "an officer immediately recognized Selby, based on a separate investigation, and knew that Selby went by the nickname 'Bizzy.'" Suppression Opp. at 4. The officers decided that Selby was a suspect and activated an investigation card for him. *Id.*

During a conversation on January 20, 2020, at Jacobi Medical Center, the victim identified the shooter as "Bizzy," who the victim claimed was a childhood friend with whom the victim was previously imprisoned. *Id.* at 5. The officers prepared a six-photograph array containing Selby's photograph with five other people, and administered the array on a double-blind basis: the administering officer did not know which of the six photographs depicted the suspect. *Id.* The victim identified Selby and said, "I'm positive that's him." *Id.* The victim did not consent to be recorded during the conversation, but did participate in a recorded interview the next day. *Id.*

On January 31, 2020, NYPD detectives met with Christopher Miller, a parole officer who had supervised Selby for approximately one year. *Id.* at 6. A detective showed Miller five still images taken from the surveillance footage and asked if Miller recognized anyone. *Id.* Miller said that he recognized Selby, in part because he's "always wearing that same coat." *Id.*

## DISCUSSION

I.   Motion to Dismiss

Selby argues that the Indictment—charging an ammunition-related crime under 18 U.S.C. § 922(g)(1)—must be dismissed as violating the Second Amendment of the Constitution under the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). In *Bruen*, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 597 U.S. at 17. The Court thus imposed an affirmative obligation on the Government to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation" by identifying a "distinctly similar historical regulation" or "representative historical analogue." *Id.* at 17, 26, 30. Selby contends that the Government has not made the requisite

2

historical showing, and argues that the ammunition-related count is facially unconstitutional.[1] Dismiss Mem. at 22–23.  Binding Circuit precedent forecloses this conclusion.

Section 922(g)(1) makes it unlawful for any person convicted of a felony to possess a firearm or ammunition.  Nine years before *Bruen*, the Second Circuit "affirm[ed] that § 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." *United States v. Bogle*, 717 F.3d 281, 281–82 (2d Cir. 2013) (per curiam).  Selby contends that *Bogle* is no longer good law in the wake of *Bruen*.[2]  Def. Mem. at 30.  The Court disagrees.

In *Bogle*, the Circuit analyzed language from *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), in which the Supreme Court stated that *Heller* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons." 717 F.3d at 281.  *Bruen* reaffirmed *Heller* and *McDonald*, and a concurring opinion from two of the six justices in the majority reiterated that restricting the possession of firearms by persons convicted of felonies remains constitutional.  *See Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring).  In addition, *Bogle* did not employ the "means-end" test for scrutinizing gun regulations that *Bruen* specifically overturned.  *See id.* at 19–24.  Therefore, *Bogle* remains binding precedent, and Section 922(g)(1) remains constitutional.[3]

---

[1] Selby also suggests that the statute is unconstitutional as applied to him, but presents no argument specific to his circumstances apart from a conclusory statement that his prior second-degree attempted murder conviction does not preclude a finding that the statute is unconstitutional as applied.  *See* Dismiss Mem. at 24.  The Court, therefore, only addresses his facial challenges.  *See United States v. Malka*, 602 F. Supp. 3d 510, 529 (S.D.N.Y. 2022) ("[W]e usually do not decide issues that a defendant raises only in passing." (quoting *United States v. Griffin*, 794 F. App'x 14, 18 (2d Cir. 2019)).

[2] Selby is not the first criminal defendant to pursue this line of argument following *Bruen*.  The Court has twice rejected a similar argument.  *See United States v. Golston*, No. 23 Cr. 362, 2024 WL 149603 (S.D.N.Y. Jan. 12, 2024); ECF No. 30, *United States v. Johnson*, No. 23 Cr. 365 (S.D.N.Y. Dec. 5, 2023).  And, other courts in this District have uniformly rejected these challenges.  *See, e.g.*, *United States v. Ford*, No. 23 Cr. 107, 2023 WL 7131742, at *2 (S.D.N.Y. Oct. 30, 2023); *United States v. Abreu*, No. 23 Cr. 67, 2023 WL 6541302, at *3 (S.D.N.Y. Oct. 6, 2023); *United States v. Nelson*, No. 22 Cr. 436, 2023 WL 6520378, at *2 (S.D.N.Y. Oct. 4, 2023).

[3] Even if the Court were to separately apply the *Bruen* analysis, it would conclude that the regulation is constitutional.  Section 922(g)(1) is supported by a "representative historical analogue," specifically, restrictions on firearm possession based on "a group's perceived dangerousness." *United States v. Ford*, No. 23 Cr. 107, 2023 WL 7131742, at *3 (S.D.N.Y. Oct. 30, 2023).

Accordingly, Selby's motion to dismiss the Indictment is DENIED.

II.     Motion to Suppress

Selby also moves to suppress the identifications by the victim and Miller. In the alternative, Selby requests that the Court hold a pretrial hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967).

   A. Legal Standard

Evidence of "[a] prior identification will be excluded only if the procedure that produced the identification is 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'" *United States v. Salameh*, 152 F.3d 88, 125 (2d Cir. 1998) (citation omitted). A court must evaluate a pretrial identification, when challenged, using a one- or two-step inquiry. "The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If they were not, the identification is "generally admissible without further inquiry into the reliability of the pretrial identification." *Id.* "If the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures." *Id.* (citations omitted).

A defendant "may not baldly request" a hearing into the admissibility of pretrial identification evidence—commonly known as a *Wade* hearing. *United States v. Wagner*, No. 20 Cr. 410, 2022 WL 19181, at *3 (S.D.N.Y. Jan. 3, 2022). To be entitled to a hearing, a defendant must instead "allege facts supporting his contention that the identification procedures used were impermissibly suggestive. A 'threshold showing' of suggestiveness is necessary in order to trigger a *Wade* hearing." *United States v. Williams*, No. 13 Cr. 580, 2014 WL 144920, at *1

(S.D.N.Y. Jan. 15, 2014) (citation omitted); *see also United States v. Scott*, No. 21 Cr. 429, 2021 WL 4125212, at *1 (S.D.N.Y. Sept. 9, 2021).

      B.  Analysis

Selby first contends that the victim's identification resulted from an unduly suggestive photo array. Suppression Mem. at 12–13. The Court disagrees. First, the victim's identification was based on a six-photograph array conducted in a double-blind fashion. "Courts in this Circuit have held that a photo array containing six or more photographs is sufficiently large so as not to be unduly suggestive." *United States v. Morgan*, 690 F. Supp. 2d 274, 283 (S.D.N.Y. 2010). Second, the array displayed photographs of six individuals of similar complexions, hairstyles, and facial hair. Selby claims that he "is the only individual with a goatee," and every other individual "is either entirely clean shaven or has a beard along his jawline." Suppression Mem. at 12–13. Selby does not claim that the victim told the officers that the shooter had a goatee, such that a "lineup in which only the defendant has that characteristic may well taint the identification of the defendant only by that viewer." *Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001). Moreover, three of the five pictured individuals have beards that extend from the chin beyond the jawline. *See* Suppression Opp. at 10. Selby's picture does not "so st[and] out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." *United States v. Jakobetz*, 955 F.2d 786, 803 (2d Cir. 1992).

Selby next argues that, because the NYPD suspected him to be the shooter before their unrecorded interview of the victim, they may have revealed his identity, requiring a *Wade* hearing "to clarify what was discussed before the [victim] viewed the photo array." Suppression Reply at 3–4, ECF No. 21. But, the Government represents that the NYPD officers used a double-blind procedure where the administering officer did not know the identity of the suspect. Suppression Opp. at 9. "Where, as here, Defendant's suggestion of impropriety in the

5

presentation of a photo array is mere speculation, a pretrial hearing into the identification procedures is not warranted." *United States v. Swain*, No. 08 Cr. 1175, 2011 WL 4348142, at 7 (S.D.N.Y. Aug. 16, 2011); *see also United States v. Durant*, No. 18 Cr. 702, 2019 WL 2236233, at *3 (S.D.N.Y. May 15, 2019) (requiring a "definite, specific, detailed, and nonconjectural" showing to order a hearing).[4]

Selby then contends that Miller's identification should be suppressed because of an unduly suggestive identification procedure. Suppression Mem. at 13–14. NYPD documents indicate that officers contacted multiple parole officers associated with Selby and inquired whether they could identify or locate him. *Id.* at 14. Selby concedes that the form for Miller's identification states that the parole officer "was provided no information about Mr. Selby or the investigation before making his identification." *Id.* at 13–14. Selby's claim that officers informed Miller that they were looking for Selby is, therefore, conjecture. Moreover, "courts have held that identification procedures like the one in this case, where an officer is asked whether they recognize a person depicted in video footage as someone with whom they were previously familiar, are confirmatory in nature and thus not unduly suggestive." *United States v. Kelly*, No. 23 Cr. 113, 2024 WL 182409, at *4 (S.D.N.Y. Jan. 17, 2024) (collecting cases).

Because Selby has not established that the procedures used were unduly suggestive, his motion to suppress the identifications by the victim and Miller is DENIED.[5]

---

[4] Selby also argues that the victim's identification was not independently reliable. Suppression Mem. at 13–14. But, if identification procedures are not unduly suggestive, "any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility." *Maldonado-Rivera*, 922 F.2d at 973. "[T]he reliability of the identification evidence can be ensured through the time-honored process of cross-examination—the device best suited to determine the trustworthiness of testimonial evidence." *Williams*, 2014 WL 144920, at *3 (citation omitted).

[5] Selby also requests the exclusion of the evidence from trial under Federal Rules of Evidence 403 and 701. Suppression Mem. at 5–10. His motion is premature. These rules require the Court to determine the "probative value" of the evidence, Fed. R. Evid. 403, and whether the lay opinion testimony would be "helpful . . . to determining a fact in issue," Fed. R. Evid. 701(b). Such determinations are properly made *in limine*. *See, e.g.*, *Kelly*, 2024 WL 182409, at *2–3, 5. Selby's request, therefore, is denied without prejudice to renewal.

## CONCLUSION

For the foregoing reasons, Selby's motions to dismiss the Indictment and to suppress identification evidence are DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 12 and 15.

SO ORDERED.

Dated: March 5, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge